AO 91 (Rev. 11/11)  Criminal Complaint

**FILED**
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

# UNITED STATES DISTRICT COURT
for the

District of New Mexico

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  **24mj1621** |
| Luis HERRERA and Raul RAMOS | ) | |
| | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of _____September 25, 2024_____ in the county of _____Bernalillo_____ in the
_____ District of _____New Mexico_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846 | Conspiracy to Distribute Controlled Substances; |
| 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), 18 U.S.C. § 2 | Distribution of 400 grams of a mixture and substance containing a detectable amount of fentanyl, aiding and abetting. |

This criminal complaint is based on these facts:

Please see the attached affdavit of DEA Task Force Officer Travis Chavez, which is incorporated by reference and has been reviewed and approved by AUSA David Hirsch.

☑ Continued on the attached sheet.

*Travis A. Chavez*
*Complainant's signature*

Travis Chavez, DEA Task Force Officer
*Printed name and title*

Telephonically sworn and electronically signed.

Date: _____11/05/2024_____

*Kirtan Khalsa*
*Judge's signature*

City and state: _____Albuquerque, New Mexico_____     The Hon. Kirtan Khalsa, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Travis Chavez, a Task Force Officer with the Drug Enforcement Administration ("DEA"), being duly sworn, depose and state as follows:

1. I have been a Task Force Officer with the DEA since February 2024.  Before that, I was Detective with the Rio Rancho Police Department since April of 1999. As such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations and to make arrests for criminal offenses, to include those enumerated in 18 U.S.C. § 2516.

2. To become a detective and Task Force Officer, I received advanced training in controlled substance identification, narcotics related investigation techniques, interview and interrogation training, preparation of search warrants, tactical applications of narcotics enforcement, surveillance and electronic monitoring techniques.  I also received training in the methods of operation of Drug Trafficking Organizations, and in the investigation of Title 21 violations.  As a result, I am familiar with matters including, but not limited to, the means and methods used by individuals to purchase, transport, store, and distribute drugs and to hide profits generated from those transactions.

3. This affidavit is based on my observations and information obtained from other law enforcement sources.  It does not set forth all of my knowledge related to this investigation.

4. This affidavit is submitted in support of a criminal complaint charging Luis HERRERA ("Herrera") and Raul RAMOS ("Ramos") with the following violations:

    a. 21 U.S.C. § 846: Conspiracy to distribute controlled substances; and

    b. 21 U.S.C. §§ 841(a)(1) and (b)(1)(A):  Distribution of 400 Grams and More of a Mixture and Substance Containing Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide), and 18 U.S.C. § 2: Aiding and Abetting.

## PROBABLE CAUSE

### September 10, 2024 Controlled purchase

5. On September 10, 2024, agents conducted an undercover purchase of approximately 4,500 fentanyl pills from Davontee "DJ" Johnson.

6. Agents first established surveillance at the Chevron gas station located at 1111 Rio Grande Blvd NW in Albuquerque, NM.  Agents observed Johnson's vehicle, a black Crown Victoria, arrive at the Chevron.  Agents noticed a white BMW 5 series arrive at the same location.  The BMW in question bore New Mexico Registration

"BKPT00" and is registered to Herrera. The two aforementioned vehicles were driven away from the Chevron gas station in tandem. Both vehicles were followed directly to the Speedway gas station located at 924 Rio Grande Blvd NW. Johnson parked on the east side of the Speedway, while Herrera circled the lot before parking nearby.

7.  An undercover law enforcement officer ("UC-1") travelled to the Speedway and met with Johnson on the east side of the property. UC-1 paid Johnson $4,600 for 4,473 fentanyl pills. Herrera appeared to be observing both Johnson and UC-1 during the transaction.

8.  After the transaction between UC-1 and Johnson, Herrera and Johnson both entered the Speedway store.

9.  Based on my training and experience, I believe that the interaction between Johnson and Herrera is consistent with the behavior of a drug trafficker (Johnson) and his source of supply (Herrera). Many drug sources do not trust those below them in the chain of distribution to hold large amounts of cash for an extended period of time, and may want near-immediate payment for drugs they supply.

**September 25, 2024 Controlled Purchase**

10. On September 25, 2024, an undercover law enforcement officer ("UC-2") arranged the purchase of 10,000 fentanyl pills from Ramos via text messages. Ramos advised UC-2 to go Amadeo's Pizza, located at 809 98th Street SW, Albuquerque, NM. This restaurant is located adjacent to the Rosewood Mobile Home Park and within approximately 85 yards of Ramos's residence.

11. During UC-2's text messages with Ramos, agents were conducting surveillance at Herrera's residence. Shortly after UC-2 advised Ramos that he/she had arrived at the Amadeo's Pizza, agents observed Herrera walk out of his residence and enter his white BMW. This vehicle, which bears New Mexico license plate number BKPT00, is the same vehicle previously mentioned above.

12. A few minutes later, agents observed Herrera's white BMW arrive at the Rosewood Mobile Home Park in front of Ramos's residence. Agents observed Ramos leave his residence and enter Herrera's BMW through the front passenger door. Immediately thereafter, Herrera and Ramos drove directly to the Amadeo's Pizza and parked next to the UC's vehicle.

13. Ramos exited the white BMW with a brown package under his shirt and entered UC-2's vehicle. Ramos handed the brown package containing approximately 10,000 fentanyl pills to UC-2, and in turn, UC-2 handed Ramos $7,500.00 in cash.

14. Ramos then left UC-2's vehicle and re-entered the white BMW, which exited the parking lot.  Agents were able to maintain surveillance on Herrera and Ramos for approximately an hour, until they drove back to Ramos's residence.

15. Based on my training and experience, I believe that the interaction between Ramos and Herrera is consistent with the behavior of a drug trafficker (Ramos) and his source of supply (Herrera).  Many drug sources do not trust those below them in the chain of distribution to hold large amounts of cash for an extended period of time and may want near-immediate payment for drugs they supply.

16. I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.


_Travis A. Chavez_
TRAVIS CHAVEZ
TASK FORCE OFFICER
Drug Enforcement Administration



Telephonically sworn and electronically signed on November 5, 2024.

_Kirtan Khalsa_
HONORABLE KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE